IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMMAD HOSSAIN,<br><br>                    Plaintiff,<br><br>        v.<br><br>AMERICAN SECURITY INSURANCE COMPANY, JOHN DOES 1-5, and ABC CORPS 1-3 (*Fictitious Names*),<br><br>                    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>        Civil Action No.<br>        15-8138 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

This action arises out of the distribution of settlement proceeds following an insurance claim for damages sustained to Plaintiff Mohammad Hossain's (hereinafter, "Plaintiff") multi-unit residential complex (hereinafter, the "property") on November 20, 2014.  More specifically, in the aftermath of severe fire damage, Plaintiff filed a claim against a fire hazard insurance policy issued by Defendant American Security Insurance Company (hereinafter, "Defendant").  In partially resolving the claim, however, Defendant disbursed an insurance settlement check to Plaintiff (as the borrower) and to M&T Bank (as the named insured).  Nevertheless, Plaintiff claims that M&T Bank holds no mortgage or insurable interest in the property, and therefore has no right to be listed as a payee on the insurance check.  As a result, Plaintiff filed (with counsel) an

essentially two-Count "Petition and Order to Show Cause" (hereinafter, the "Petition")[1] seeking a declaration that M&T Bank has no interest in the insurance policy, and damages for Defendant's "bad faith" refusal to investigate the proper payee on Plaintiff's insurance claim.[2]

Following removal, Defendant now moves to dismiss Plaintiff's Petition on the grounds that he lacks standing under the insurance agreement to sue Defendants (see Def.'s Br. at 7-13), and because he has not alleged, and cannot allege, that Defendant violated the terms of the insurance agreement. (See id. at 16-18.)  In fact, Defendant claims that it did little more than issue a settlement check in accordance with the plain terms of the insurance policy. (See id. at 3.)  Plaintiff has

---

[1] Plaintiff's state court Petition included the following documents: (1) a Notice of Motion for an Order to Show Cause; (2) the Petition; (3) a Brief in Support of the Petition; (4) the Certification of Plaintiff with exhibits; (5) the Certification of Counsel with exhibits; (6) a proposed Order to Show Cause; and (7) a Proof of Service.  In reviewing Plaintiff's allegations, the Court has considered these documents together.

[2] In addition, Plaintiff asserted a third Count for "Unknown Entity Liability," in which he claims that various fictitious entities act as "the true insurers of Defendant[]" and are therefore "responsible" for Defendant's wrongful conduct. (Pl.'s Pet. at 5 ¶¶ 1-3.)  For the reasons that follow, Plaintiff's Petition will be dismissed.  This dismissal will, however, be without prejudice to Plaintiff's right to identify these fictitious entities, if any, and to pursue this claim in his amended pleading.

filed no opposition, nor otherwise demonstrated an ongoing interest in pursuing this litigation.[3]

This Court has jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, and the case was properly removed to this Court.

The straightforward issues presented by the pending motion concern whether Plaintiff has standing to pursue his claims, and, if so, whether he has stated plausible claims for relief. For the reasons that follow, Defendant's unopposed motion to dismiss will be granted.  The Court finds as follows:

1.  **Factual and Procedural Background**.[4]  In 2005, Plaintiff purchased the property through an "initial purchase money

---

[3] The deadline to file opposition expired on December 21, 2015, and neither Plaintiff nor his counsel have contacted the Court (or otherwise prosecuted this action) since Defendant's removal of this action on November 18, 2015.  Indeed, despite service of the Notice of Removal, the pending motion, and various other Court documents (including one that specifically directed him to file an appearance through a member of the Bar of this Court), counsel for Plaintiff has never even entered an appearance in this action.  [See Docket Items 1-12, 2, & 5-14.]

[4] The Court notes, at the outset, that although Plaintiff's pleading – a petition, brief, and two support certifications – sketches out the general contours of his case, it offers little in terms of clarifying details.  Nevertheless, for purposes of the pending motion, the Court accepts as true the version of events set forth in Plaintiffs' Petition, together with its various exhibits.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); see also ACR Energy Partners, LLC v. Polo N. Country Club, Inc., ___ F. Supp. 3d ____, Nos. 15-2677 & 15-5324, 2015 WL 6757574, at *1 n.2 (D.N.J. 2015) (same).  In addition, the Court looks to "documents integral to or explicitly relied upon in the" Petition, along with "undisputedly authentic document[s]" attached to Defendant's motion which provide a

mortgage" with Wells Fargo Bank.  (Smith Cert. at ¶ 14.)
Following refinancing with various financial institutions, on
April 4, 2014 (id. at ¶¶ 15-17), J.P. Morgan Chase Bank,
National Association (hereinafter, "J.P. Morgan") assigned all
of its rights in Plaintiff's mortgage to Bayview Loan Servicing
(hereinafter, "Bayview Servicing").  (Id. at ¶¶ 17-18.)  As a

---

clear basis for Plaintiff's claims.  In re Rockefeller Ctr.
Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999)
(citations omitted).  For that reason, the Court considers, as
it must, Defendant's insurance policy (a document Plaintiff
explicitly relies upon in his pleading), as well as the
undisputedly authentic documents evidencing Bayview Servicing's
retention of M&T Bank as the servicer for Plaintiff's mortgage
(a document which, again, informs the circumstances described in
Plaintiff's pleading), and those documents that explain the
issuance by Defendant of a lender-placed hazard insurance
policy.  See Inacio v. State Farm Fire & Cas. Co., No. 14-4953,
2015 WL 457049, at *1 n.2 (D.N.J. Feb. 3, 2015) (considering
policy documents, among other documents concerning the same
policy and property at issue in the complaint, in connection
with a motion to dismiss).  Indeed, although Plaintiff takes the
position that M&T Bank has no "secured interest" in the property
(a position equally recognized by Defendant), Plaintiff readily
acknowledges in his Petition that M&T Bank took some part in the
issuance of the hazard policy.  (Pl.'s Pet. at ¶ 8 (explaining
that M&T Bank "is listed as an insured" on Defendant's insurance
policy); Pl.'s Pet. Br. at 3-5 ("Defendant had listed M & T as
an insured, but it has never had any recorded interest in any
mortgage nor any other ownership interest in the property.").)
Even more, at least one of Plaintiff's own documents identifies
M&T Bank as the insured party.  (See, e.g., Ex. A to Smith Pet.
Cert.)  The documents attached to Defendant's motion, in turn,
explain and clarify the circumstances otherwise alluded to
Plaintiff's pleading, especially those concerning the
origination of the insurance policy relied upon by Plaintiff.
(See, e.g., Exs. H & I to Def.'s Br.)  As a result, and based
upon Plaintiff's own allegations, the Court finds them
appropriate for consideration in connection with the pending
dismissal motion.

result of these assignments, Bayview Servicing acted as "the owner of the mortgage" at all times relevant to this litigation, including at the time of the fire.  (Smith Cert. at ¶ 22.) Following this assignment, however, it selected M&T Bank "to service" Plaintiff's loan on its behalf, and as a result, M&T Bank began accepting mortgage payments from Plaintiff effective February 15, 2014.  (Ex. I to Def.'s Br.)

2.   On June 26, 2014, M&T Bank advised Plaintiff that "it ha[d] been at least 60 days since [his hazard insurance] policy expired or canceled."  (Ex. H to Def.'s Br.)  As a result, M&T Bank secured a "lender-placed hazard insurance policy" for the property, with an effective date of February 15, 2015, and with a coverage amount "equal to the outstanding principal balance of [Plaintiff's] loan."  (Id.)  The declarations for the "lender-placed," or "Mortgagee's Interest Protection," insurance policy, in turn, identified "M&T BANK ITS SUCCESSORS AND/OR ASSIGNS" as the "**NAMED INSURED**," listed Plaintiff as the "**BORROWER**," and described the covered property as 22 S. Nashville Avenue, Ventnor City, New Jersey 08406 (e.g., Plaintiff's property). (Id. (emphasis in original).)  The endorsements to the policy then explained, as relevant here, that all loss payments would "be made payable to the named insured and the borrower as their interests appear, either by a single instrument or by separate

5

instruments payable respectively to the named insured and the borrower, at [Defendant's] option."  (Id.)

3.   On November 20, 2014, a fire at the property left Plaintiff's units "unlivable." (Pl.'s Pet. Cert. at ¶ 3.)  As a result, Plaintiff filed an insurance claim with Defendant, and hired a public adjuster "to assist in the adjustment of the loss." (Id. at ¶ 4.)  Following "dealings" with the public adjuster, on February 13, 2015, Defendant issued a $163,601.83 insurance settlement check, listing both Plaintiff and M&T Bank as the payees.[5] (Id. at ¶ 6; see also Smith Pet. Cert. at ¶ 7; Ex. A to Smith Pet. Cert.)  Counsel for Plaintiff, Keith T. Smith, Esq., contacted Defendant and asked that it "reissue the check" to Plaintiff only, because "M&T Bank had no interest and no mortgage." (Smith Pet. Cert. at ¶ 8.)  Nevertheless, based upon the terms of its insurance policy, Defendant "refuse[d] to re-issue the original check and any supplemental check for [the] loss" in Plaintiff's name only. (Id. at ¶ 9.)  As a result, Plaintiff claims that he has been unable to make necessary repairs, and that the City of Ventnor has "threaten[ed] to raze the remaining building."[6] (Pl.'s Pet. at 3 ¶ 10.)

_____

[5] Despite the amount of the insurance settlement Defendant, Plaintiff's public adjuster "estimated the loss at $485,451.91." (Id. at ¶ 5 (citing Ex. A to Pl.'s Pet. Cert.).)
[6] Plaintiff's Petition provides no detail concerning M&T Bank's position on the check.

4.   Against that backdrop, on October 30, 2015, Plaintiff filed the pending Petition (with counsel) in New Jersey state court, seeking essentially a declaration that M&T Bank has "no interest in the [insurance] policy," and asserting that Defendant acted "in bad faith by refusing to investigate" the proper payee under the insurance policy.  (Id. at 4 ¶ A, 4 ¶ 3.) Defendant removed the Petition to this federal court on November 18, 2015 [see Docket Item 1], and the pending motion to dismiss followed.  [See Docket Item 4.]

5.   As explained above, Defendant takes issue with Plaintiff's Petition on the grounds that he lacks standing to pursue his claims and because he purportedly fails, in any event, to state plausible claims for relief.  (See generally Def.'s Br. at 7-18.)  The Court will address each issue in turn.

6.   **Standard of Review Applicable to Defendant's Standing Challenges**.  "Article III of the United States Constitution limits the jurisdiction of federal courts to Cases and Controversies, U.S. Const. Art. III, § 2." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (internal quotations and citation omitted).  Measured against this rubric, the concept of standing concerns "the constitutional power of a federal court to resolve a dispute." Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007) (citation omitted).  In order to establish Article III standing, a plaintiff must

demonstrate "'(1) an [actual, concrete, and particularized] injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" Finkelman v. Nat'l Football League, ___ F.3d ____, No. 15-1435, 2016 WL 158507, at *4 (3d Cir. Jan. 14, 2016) (citations omitted); see also Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 358-59 (3d Cir. 2015) (same).  In order to survive a motion to dismiss for lack of standing, as here, a plaintiff "'must alleged facts that affirmatively and plausibly suggest that it has standing to sue.'"  Finkelman, ___ F.3d ____, 2016 WL 158507, at *5 (citation omitted).

7.  **Discussion**.  Here, Defendant takes the position that Plaintiff cannot demonstrate a qualifying injury, nor a sufficient causal connection between his claimed injury and alleged damages, because it disbursed the settlement proceeds "**exactly according to the terms of the Policy.**"  (Def.'s Br. at 10-13 (emphasis in original).)  Stated differently, Defendant argues that Plaintiff's claims, at their core, present little more than a challenge to the manner in which Defendant "properly" disbursed the insurance settlement proceeds.  (Id. at 10.)  In that way, Defendant essentially takes the position that Plaintiff lacks constitutional standing because his claims lack merit.  Defendant's position, however, misses the mark.

8

8.    Unlike a Rule 12(b)(6) dismissal analysis, a
constitutional standing inquiry is not directed at assessing
whether a plaintiff presents plausible and/or facially
meritorious claims.  Rather, the inquiry focuses, as explained
above, on whether the plaintiff suffered "'personal and
individual'" harm, caused (indirectly or otherwise) by "the
defendant's challenged conduct" (whether wrongful or not).
Freeman v. Corzine, 629 F.3d 146, 153 (3d Cir. 2010) (citations
omitted).  Plaintiff in this instance easily meets this minimum
threshold, even though the Court finds his claims otherwise
subject to dismissal.

9.    Indeed, as the "**BORROWER**" on the insurance policy and
a named payee on the disputed settlement check, Plaintiff's
allegations show, at a minimum, that he has suffered "'a
palpable and distinct harm'" on account of his inability to
perform necessary property repairs (based, presumably, upon his
inability to cash the settlement check without the endorsement
of M&T Bank).  Id.  This alleged harm, in turn, plainly resulted
from the manner in which M&T Bank disbursed the settlement
proceeds, even if, again, that disbursement occurred consistent
with the terms of the policy.

10.  Against this backdrop, the Court finds Plaintiff's
allegations sufficient to meet the low bar imposed by federal
constitutional standing jurisprudence.  See The Pitt News v.

Fisher, 215 F.3d 354, 360 (3d Cir. 2000) (emphasis in original) (citations omitted) (explaining that, in order to "demonstrate its standing to sue, a plaintiff must only allege that [it] ha[s] suffered sufficient injury to comply with Article III's "case or controversy") requirement"); Geisenberger v. Gonzales, 346 B.R. 678, 681 (E.D. Pa. 2006) (citations omitted) (explaining that the standing "hurdle is not a high one"). Nevertheless, the Court still finds Plaintiff's Petition subject to dismissal for failure to state a plausible claims for relief, as now explained.

     11.  **Standard of Review Applicable to Defendant's Plausibility Challenges**.  Under Federal Rule of Civil Procedure 12(b)(6), the court must generally accept as true the factual allegations of the plaintiff's claims, and construe all "reasonable inferences" in the light most favorable to the plaintiff.  Revell v. Port Auth. of N.Y., N.J., 598 F.3d 128, 134 (3d Cir. 2010); see also Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (same).  Nevertheless, the "well-pled factual allegations" must be sufficient to demonstrate a plausible "entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Umland v. PLANCO Fin. Serv., Inc., 542 F.3d 59, 64 (3d Cir. 2008).

12.  **Discussion**.  Plaintiff's Petition requires no complex inquiry, because his allegations, even accepted as true, prove plainly insufficient to state plausible claims for relief. Indeed, although dressed in different terms (one for declaratory judgment and the other for bad faith), the two Counts of Plaintiff's Petition rest upon one fatally flawed premise, namely, the notion that Defendant somehow violated the terms of the insurance policy, by disbursing a check in the name of a party (here, M&T Bank) with supposedly no relationship to Plaintiff's property or to the insurance policy itself.  (See generally Pl.'s Pet.)

13.  In that way, though, Plaintiff's claims, as presently fashioned, reflect either a misunderstanding of the plain mutual rights and obligations of Defendant, M&T Bank, and Plaintiff, or simply a disregard for the realities of this arrangement. Indeed, the insurance policy names, on its face, M&T Bank as the "**NAMED INSURED**" and lists Plaintiff as the "**BORROWER.**"  (Ex. H to Def.'s Br.)  The insurance policy then explains that loss payments "will be made payable to the named insured **and** the borrower as their interests appear."  (Id. (emphasis added).) In other words, the check would, as occurred here, be disbursed to M&T Bank as the "Insured" **and** Plaintiff as the "Borrower." (Ex. A to Smith Pet. Cert.)

11

14.   In view of the clear dictates of the insurance policy, Plaintiff has not alleged any policy violation by Defendant, much less provided any factual support for a bad faith claim or for his position that M&T Bank should not have been included on the disbursement check.   Indeed, Plaintiff's claims entirely ignore the policy provisions, as well as unambiguous identification of M&T Bank as the "Named Insured," all as confirmed by the undisputed documents referenced in the Petition herein.[7]   (See generally Pl.'s Pet.)   In light of these pleading deficiencies, Defendant's unopposed motion to dismiss will be granted for failure to state a claim.[8]

15.   An accompanying Order will be entered.


__February 8, 2016__            __s/ Jerome B. Simandle__
Date                            JEROME B. SIMANDLE
                                Chief U.S. District Judge

---

[7] Nor, for that matter, has Plaintiff come forward with any additional explanation in opposition to the pending motion.
[8] The Court has serious doubts concerning whether any amount of pleading supplementation and/or discovery would add life to Plaintiff's claims.   Nevertheless, the Court leaves open the possibility that additional allegations may bring into focus the basis, if any, for Plaintiff's challenges to Defendant's settlement disbursement.   For that reason, the Court will permit Plaintiff, if desired, to file an amended pleading within fourteen (14) days, addressing the many deficiencies noted herein.